**EOD**

**09/29/2020**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Case No. 09-43121-BTR-7** |
| **Donald Lee Cardwell,** | § | |
| | § | **Chapter 7** |
| DEBTOR. | § | |
| | § | |
| | § | |
| **Mark A. Weisbart, Chapter 7 Trustee,** | § | |
| | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | **Adv. Proc. No. 17-4074** |
| | § | |
| **Donald Lee Cardwell, David McKinnon, North Ponderosa LLC, Barbara Marshall, LP** | § | |
| | § | |
| | § | |
| | § | |
| DEFENDANTS. | § | |

## MEMORANDUM OPINION ON REMAND

Bill Gurley and Stanley Wright reopened this bankruptcy case to vacate an April 12, 2011 order authorizing the sale of certain real property to North Ponderosa, LLC pursuant to Federal rule of Bankruptcy 9024 and Federal Rule of Civil Procedure 60(d)(3). The motion to vacate and the related adversary complaint relied, in part, upon certain findings by a Texas state trial court. David McKinnon, North Ponderosa, and Barbara Marshall, LP (collectively, the "**McKinnon Parties**"), opposed the motion to vacate and argued, among other things, that the state trial court's findings should not be given preclusive effect. The parties filed competing motions for summary judgment on the issue of whether to vacate the 2011 sale order in both the bankruptcy case and a related adversary proceeding. The issue is now once again before this Court on remand.

1

# I.      PROCEDURAL BACKGROUND

This bankruptcy case and the related adversary proceeding are before the Court following a remand by the Fifth Circuit.  The District Court affirmed decisions of this Court: (1) applying collateral estoppel to certain findings of fact issued by the Texas state trial court; and (2) vacating its earlier order entered in the bankruptcy case that approved the sale of a 94-acre tract of land under Federal Rule 60(d)(3).  The McKinnon Parties appealed.  While the appeal was pending before the Fifth Circuit, the Court of Appeals for the Fifth District of Texas at Dallas issued *McKinnon v. Gurley*, 2018 WL 5291874, at \*1 (Tex. App.— Dallas Oct. 25, 2018).  In its per curium decision remanding the dispute back to this Court, the Fifth Circuit commented that the state appellate decision "may call into question the preclusive effect of the state trial court's findings of fact." *Matter of Cardwell*, 785 F. App'x 269, 269 (5th Cir. 2019).

This Court conducted a hearing on March 2, 2020.  The parties presented their arguments regarding the legal effect of the state appellate court's ruling.  Mark Weisbart, the current Chapter 7 trustee, took the position that the ruling does not invalidate or conflict with this Court's prior decisions.  The McKinnon Parties took the position that it does and that this Court should set aside or vacate its prior orders.

A discussion of the background of this case is instructive for purposes of understanding why this Court made its original ruling on the motions for summary judgment in the bankruptcy case, as well as its subsequent rulings in the related adversary proceeding, and what the Court must consider on remand.  The parties have essentially stipulated that there is no factual dispute in need of resolution.  They each presented

opposing motions for summary judgment, and briefs following remand, based upon the application of appropriate law.

## II.   UNCONTESTED FACTS

1.      Bill Gurley and Donald Cardwell were business associates for many years. However, on March 30, 2006, Gurley and 121 Investments, a limited liability company equally owned by Cardwell and Gurley, filed their original petition in the District Court for the 134th Judicial District of Dallas County, Texas, Cause No. DC-06-03299, against Cardwell for breach of fiduciary duty.   Gurley alleged that Cardwell made a series of misrepresentations to him in the course of conducting business on behalf of 121 Investments.   Following a two-day bench trial, on July 14, 2009, the state court entered judgment against Cardwell in the amount of $370,830.84 plus post-judgment interest.

2.      On October 2, 2009, Cardwell filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code.

3.      Cardwell timely filed bankruptcy schedules and a statement of his financial affairs.   The Chapter 7 trustee and Cardwell's ex-wife objected to Cardwell's claimed exemptions.   In response, Cardwell amended his bankruptcy schedules and statement of financial affairs several times.

4.      In his amended schedules filed on July 26, 2010 and August 8, 2010, Cardwell disclosed that he was living on 118 acres in Melissa, Texas.   However, he stated that only 24 of those acres, which included his residence, comprised his exempt homestead. He stated that the remaining 94 acres were encumbered by a $600,000 lien in favor of

3

"Barbara Marshall" (the "**Marshall Lien**"), and he represented that he had no equity in the non-exempt 94 acres.

5.      On January 19, 2010, Barbara Marshall, LP ("**BMLP**"), filed a proof of claim for $600,000.  The note and deed of trust attached to the claim were dated October 22, 2008 (within one year of the petition date).

6.      The Chapter 7 trustee's counsel reviewed the documents attached to BMLP's claim and examined Mrs. Marshall pursuant to Bankruptcy Rule 2004.  Mrs. Marshall's financial advisor, David McKinnon, attended the examination.  The Chapter 7 trustee also deposed Cardwell and visited the 94 acres in Melissa, Texas, with an appraiser.

7.      On November 3, 2010, this Court determined that Gurley's judgment against Cardwell was exempt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4).  The decision was affirmed on appeal.  *Cardwell v. Gurley*, 2011 WL 6338813 (E.D. Tex. Dec. 19, 2011), *aff'd sub nom. In re Cardwell*, 487 F. App'x 183 (5th Cir. 2012).

8.      At some point, David McKinnon formed North Ponderosa and began negotiating the purchase of the 94 acres in Melissa, Texas (the "**Melissa Property**").  North Ponderosa offered to buy the Melissa Property from Cardwell's bankruptcy estate while Cardwell's appeal of the non-dischargeability judgment was pending.  The Chapter 7 trustee was aware that McKinnon, who was Mrs. Marshall's financial advisor, was also associated with North Ponderosa.

9.      On February 17, 2011, the Chapter 7 trustee filed a motion to sell the Melissa Property to North Ponderosa, LLC, for $25,000 plus the assumption of the Marshall Lien.

4

No objection was filed.  On April 12, 2011, this Court entered the order authorizing the sale ("**Sale Order**").

10.     On October 25, 2013, the Court closed the bankruptcy case.

11.     On December 19, 2013, after completion of Cardwell's bankruptcy case, Gurley filed a post-judgment application for turnover relief and appointment of a receiver in state court in cause number 06-3299.  The state trial court appointed Stanley Wright as the receiver.  Thereafter, Wright deposed Cardwell and learned that Cardwell was leasing the Melissa Property for $10 per year pursuant to a lease agreement with North Ponderosa.

12.     Gurley and Wright amended their post-judgment petition to assert fraudulent transfer claims against not only Cardwell, who was the defendant in cause number 06-3299, but also David McKinnon, North Ponderosa, BMLP and others connected to the allegedly fraudulent transfer of the Melissa Property (collectively, the "**TUFTA defendants**") to North Ponderosa.   Gurley and Wright sought relief pursuant to the Texas Uniform Fraudulent Transfer Act ("**TUFTA**").  Gurley and Wright challenged, among other things, the creation of the Marshall Lien and the transfer of the Melissa Property to North Ponderosa as fraudulent conveyances under TUFTA.

13.     Gurley and Wright filed their TUFTA claims as part of their post-judgment collection action in the existing state court proceeding.  Except for Cardwell, the TUFTA defendants were not parties to the original lawsuit.  Gurley and Wright did not initiate a new action against the TUFTA defendants in state court.

14.     On September 25, 2014, the McKinnon Parties filed a motion with this Court, requesting that this Court reopen Cardwell's bankruptcy case in order to evaluate and

administer the TUFTA claims asserted by Gurley and Wright in the state court post-judgment proceeding. More specifically, the McKinnon Parties argued that the TUFTA claims were property of the bankruptcy estate and should be administered by this Court.

15.    On December 17, 2014, the Court authorized the state court litigation to proceed, subject to the requirement that any recovery obtained by Gurley and Wright would be deposited into this Court's registry for the benefit of the bankruptcy estate. The Court subsequently re-closed Cardwell's bankruptcy case.

16.    The 134th Judicial District Court conducted a bench trial on October 1, 2, and 5, 2015 on the TUFTA claims. On October 13, 2015, the state trial court entered a partial final judgment in cause number 06-3299, reiterating the award provided in the 2009 final judgment, and ordering that execution levy on the Melissa Property (leaving the issue of attorney's fees for a subsequent hearing).

17.    On October 20, 2015, Gurley and Wright filed a motion in state court to sever their TUFTA claims from the underlying breach of fiduciary duty case. Gurley and Wright's "Second Amended Post-Judgment Petition for Relief" was the live pleading at the time they presented their fraudulent transfer claims to the state trial court and at the time of the purported severance. That petition recited "[t]his action is an ancillary post judgment effort to collect and enforce this Court's judgment" and reiterated the award provided in the original July 14, 2009 final judgment. The petition sought to establish claims for fraudulent conveyances under TUFTA §§ 24.005(a)(1)-(2) and 24.006(a)-(b), and the petition requested relief under TUFTA § 24.008(a)-(b).

18. On November 6, 2015, the state trial court granted Gurley and Wright's motion to sever and ordered the clerk of the court to give the severed claims a new cause number and transfer copies of relevant pleadings and orders into the newly severed action. The clerk assigned the severed claims cause number 15-13561. The state trial court then signed a document entitled "Final Judgment" under the new cause number, which reiterated the monetary award provided in the July 14, 2009 final judgment in cause number 06-3299 as well as the order that "execution shall be levied" on the Melissa Property provided in the partial final judgment. The 2015 final judgment disposed of the attorney's fee claims without awarding any fees.

19. The state trial court memorialized its findings on the TUFTA claims in the Second Amended Findings of Fact and Conclusions of Law ("**FOFCOL**") issued on June 4, 2016.

20. The McKinnon Parties appealed from the state trial court's 2015 Final Judgment.

21. This Court reopened Cardwell's bankruptcy case on July 7, 2016, for the purpose of determining whether a fraud had been perpetrated on the bankruptcy court in connection with the Sale Order, and if so, whether to vacate the Sale Order administer the Melissa Property as an asset of the bankruptcy estate.

22. On August 5, 2016, Gurley and Wright filed their motion to vacate the Sale Order as having been obtained through fraud on this Court pursuant to Federal Rule 60(d)(3). The parties agreed to bifurcate the procedural issues and the substantive issues raised by the motion to vacate.

23.     After a hearing regarding the procedural issues, this Court issued the "Order on Bifurcated Issues Related to Motion to Vacate the Order Granting Trustee's Motion for Authority to Sell Property of the Estate and to Pay Certain Taxes" (the "**First Order**") on November 22, 2016.  In the First Order, this Court concluded that (1) Gurley and Wright were authorized to pursue the relief sought in their motion to vacate; (2) Gurley and Wright were not required to file an adversary proceeding pursuant to Bankruptcy Rule 7001, and (3) the McKinnon Parties were collaterally estopped from relitigating certain findings relating to the fraudulent nature of the Melissa Property transaction in connection with the motion to vacate the Sale Order.

24.     The findings that this Court found to have preclusive effect included the following matters decided by the state trial court as part of the TUFTA claims: (1) whether the $600,000 loan from BMLP to Cardwell was funded; (2) the fair market value of the Melissa Property on the date of the purported loan; (3) whether Mrs. Marshall had any knowledge of the purported loan to Cardwell; (4) Mrs. Marshall's reliance on David McKinnon as her financial advisor; (5) McKinnon's relationship with Cardwell; (6) whether Cardwell schemed with McKinnon to protect or hide his interest in the non-exempt Melissa Property from creditors; and (7) whether Cardwell and McKinnon deliberately concealed the connections between themselves, BMLP and North Ponderosa from the Chapter 7 trustee.

25.     The parties subsequently filed cross motions for summary judgment on the issue of whether to vacate the Sale Order.  On May 25, 2017, after a hearing, this Court issued the "Order Regarding Motions for Summary Judgment" (the "**Second Order**")

denying the McKinnon Parties' motion for summary judgment, granting Gurley and Wright's motion for summary judgment, and vacating the Sale Order.

26.    The McKinnon Parties appealed this Court's orders.  The District Court affirmed, and the McKinnon Parties appealed to the Fifth Circuit.

27.    While the appeals were pending, on August 7, 2017, the Chapter 7 trustee filed an adversary complaint against the TUFTA defendants seeking to avoid the Marshall Lien as a fraudulent transfer under 11 U.S.C. § 548 as well as TUFTA.  The Chapter 7 trustee also sought to avoid the deed on the Marshall Property as an unauthorized post-petition transfer under 11 U.S.C. § 549.  In addition, the Chapter 7 trustee sought a judgment voiding the Marshall Lien on the grounds that it was not supported by any consideration as required by Texas law.  The Chapter 7 trustee requested that this Court either transfer the Marshall Property to the bankruptcy estate or order the defendants to pay the value of the Marshall Property to the bankruptcy estate.

28.    The Chapter 7 trustee filed a motion for summary judgment in the adversary proceeding on November 8, 2017 based, in part, on the First and Second Orders.  The McKinnon Parties opposed the motion.  On March 26, 2018, the Court entered an order granting the Chapter 7 trustee's motion in part and denying it in part.  The Court entered a Final Judgment and Findings of Fact and Conclusions of Law on July 3, 2018.

29.    In the adversary proceeding, the McKinnon Parties filed a "Motion to Vacate Final Judgment" on July 17, 2018 and a "Motion to Vacate and/or Motion Under FRE 9024 Seeking Relief from Final Judgment" on December 31, 2018.  The Court continued the

hearing on these motions in anticipation of a ruling on the appeal from the First and Second Orders.

30.    While the appeal of the First and Second Orders was pending in the Fifth Circuit, and after this Court entered the Final Judgment the adversary proceeding, the state appellate court issued its decision in the appeal from the state trial court's judgment.  The state appellate court dismissed the appeal, reasoning that the 2015 "Final Judgment" could only be a non-final judgment or decree enforcing the trial court's original 2009 final judgment.  The appellate court stated: "To the extent the [2015 Final] Judgment is a part of the underlying case, its substance confirms that the relief it granted was pursuant to [§] 24.008(b), which reads, in part, that a judgment creditor, 'if the court so orders, may levy execution on the asset transferred or its proceeds.'" *McKinnon v. Gurley*, No. 05-16-00246-CV, 2018 WL 5291874, at *5 (Tex. App. Oct. 25, 2018) (citation omitted).

31.    This Court conducted a status conference on remand on March 2, 2020. During that conference, the parties appeared to narrow their dispute to the following issues: (a) whether findings made in a post-judgment collection action under § 24.008(b) of TUFTA have collateral estoppel effect; (b) whether a determination under § 24.008(b) can be made without a separate TUFTA lawsuit being filed; and (c) whether the "claim" referenced in § 24.008(b) is the same as a "claim" under one of the other TUFTA provisions for setting aside fraudulent transfers.

## III.    DISCUSSION

Although the state trial court's 2015 final judgment was on appeal when the Court entered the First and Second Orders, "a judgment is final for purposes of collateral estoppel

even if an appeal is pending," *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986), under Texas law. That appeal ran its course, and the 2015 final judgment and the supporting FOFCOL upon which this Court relied were not reversed. Nonetheless, as the Fifth Circuit stated when remanding this dispute, the appellate court's decision calls into question whether this Court properly relied on FOFCOL issued in support of what the state appellate court held was a non-final judgment or decree.

## A. TUFTA Remedies

In its First Order, this Court gave preclusive effect to certain FOFCOL relating to Gurley and Wright's TUFTA claims. TUFTA is intended to prevent debtors from defrauding creditors by moving assets out of reach. *Altus Brands II, LLC v. Alexander*, 435 S.W.3d 432, 441 (Tex. App.—Dallas 2014, no pet.). As set out in Texas Business & Commerce Code § 24.008(a), in an action for relief against a transfer or obligation under TUFTA, a creditor may obtain the following relief:

> (1) an avoidance of the transfer or obligation to the extent necessary to satisfy his claim;
> (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee; or
> (3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure,
>> (a) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
>> (b) the appointment of a receiver to take charge of the asset transferred or other property of the transferee; or
>> (c) any other relief the circumstances may require.

Tex. Bus. & Com. Code § 24.008(a). In order to obtain any of the remedies available to creditors under § 24.008(a) of TUFTA, including avoidance of a fraudulent transfer, "the judgment creditor must file a separate cause of action and the claim cannot be litigated by

post-judgment motion or pleading in the underlying lawsuit." *McKinnon v. Gurley*, 2018 WL 5291874, at *2 (Tex. App. – Dallas Oct. 25, 2018) (citing *Kennedy v. Hudnall*, 249 S.W.3d 520, 525 (Tex. App. – Texarkana 2008, no pet.). In addition, where "the creditor has obtained a judgment on a claim against the debtor," the creditor may seek to "levy execution on the asset transferred or its proceeds." TEX. BUS. & COM. CODE. § 24.008(b).

In this case, the state appellate court dismissed the McKinnon Parties' appeal from the state trial court's 2015 final judgment for lack of jurisdiction. The appellate court held that the state court's severance order was a nullity and the 2015 final judgment could not be filed in the new cause number. The appellate court analyzed the 2015 final judgment as a post-judgment order entered in the original proceeding. As the appellate court explained: "The general rule is that a court has the inherent power to enforce its judgments, even after the expiration of its plenary power, and the court may employ suitable methods in doing so." *McKinnon v. Gurley*, 2018 WL 5291874, at *2 (Tex. App. – Dallas Oct. 25, 2018). The appellate court reasoned the 2015 final judgment was not a turnover order and, to the extent it granted relief under § 24.008(b), no right of appeal arises from an order incident to execution and levy under § 24.008(b). *Id.*

In *Kennedy*, which both parties cite as authority, the judgment creditors filed a motion that was styled as a turnover motion but requested relief under TUFTA. As in the present case, the judgment creditors in *Kennedy* failed to file a separate TUFTA lawsuit as required by Texas law for relief under § 24.008(a). *Kennedy*, 249 S.W3d at 522. The appellate court held that, because the trial court only retained the authority to enforce its prior judgment, and such enforcement orders are not appealable orders, it could not

exercise appellate jurisdiction without infringing on the lower court's authority to enforce

its own judgment. *Id*. at 522.

With respect to whether the legal effect of the state trial court's post-judgment order,

the appellate court in *Kennedy* took no position.  However, the appellate court noted:

> Although we see nothing in Section 24.008(b) which authorizes a court to
> make a determination whether a fraudulent transfer has taken place, we take
> no position at this point whether a court acting solely under subsection (b)
> without a separate suit would have the ability to actually or impliedly avoid
> the conveyance from Kennedy to Moore.  *See, e.g., Trevino v. Graves* 418
> S.W.2d 529, 532 (Tex. Civ. App. Houston [1st Dist.] – 1967, no writ).
> Similarly, we take no position on the necessity, if any, or effect in a collateral
> proceeding, if any, of the various factual findings made by the court in
> issuing this order, but we see that there could be substantial difficulties in
> attempting to employ those findings for use in collateral claims.  *See Buller,*
> 806 S.W.2d at 225 n. 2. Neither subsection (b) nor the comments of the
> Uniform FTA Drafting Committee of the National Conference of
> Commissioners on Uniform State Laws address the factors for a court to take
> into account when determining whether to order the issuance of a writ of
> execution.

*Id*. at 526, n. 13.

Here, the Chapter 7 trustee seeks to build on the footnote in *Kennedy*.  The Chapter

7 trustee argues that § 24.008(b) does, indeed, allow a court to determine whether a

fraudulent transfer occurred.  Thus, the trustee argues that the state trial court's findings

should have preclusive effect – even though it had lost plenary jurisdiction – because the

question of whether there was a fraudulent transfer was fully and fairly litigated in the state

trial court as part of that court's enforcement of its non-TUFTA judgment.

## B.  Issue Preclusion

In Texas, in order to establish an issue is collaterally estopped (or precluded) from

being relitigated, the party seeking to assert the bar of collateral estoppel must establish:

"(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). Relevant to the odd procedural posture of this case, under Texas law, the doctrine of collateral estoppel applies even if the underlying judgment is on appeal. *See Scurlock Oil,* 724 S.W.2d at 6.

In this case, Gurley and Wright's TUFTA claims were hotly contested by the McKinnon Parties. The state trial court heard the dispute over several days and eventually ruled in favor of Gurley and Wright. However, Gurley and Wright sought remedies under TUFTA § 24.008 at a time when the state trial court had lost the plenary jurisdiction necessary to decide a TUFTA claim as the result of the entry of a final judgment on the complaint. The trustee argues that the state trial court nonetheless could (and did) find that a fraudulent transfer had occurred and levied execution on the fraudulently transferred property under § 24.008(b) as a means of enforcing its prior judgment awarding Gurley damages for Cardwell's breach of his fiduciary duties.

First, the Chapter 7 trustee argues that a fraudulent transfer may be set aside under § 24.008(b) without filing a new, independent action. In his post-remand brief, the Chapter 7 trustee cites several cases involving TUFTA actions brought in federal court under Federal Rule 69. Federal Rule 69 provides for enforcement of judgments according to the practice and procedure of the state in which the district court sits. Judgment creditors in federal actions may seek to enforce a judgment under Federal Rule 69 without filing a new, plenary action asserting a TUFTA claim. For example, in *McLane Foodservice, Inc. v.*

14

*Wolverine Pizza, L.L.C.,* 2005 U.S. Dist. Lexis 12110, at *4 (N.D. Tex. June 21, 2005),

which the trustee cites, McLane sought to collect on its federal judgment by filing a motion

under Federal Rule 69.  Texas law was applicable in *McLane Foodservice*, and McLane

prevailed on its claim that the judgment debtor's transfer of certain notes to a business,

which then transferred the notes to another business, was fraudulent as to present creditors

under TUFTA § 24.006(a).  McLane sought, and obtained, an order levying execution on

the Notes under § 24.008(b).

Cases such as *McLane* are distinguishable because Texas does not follow the same

post-judgment enforcement and collection procedure as federal courts.  As discussed by

the Texas appellate court in *Kennedy*, as well as the appellate court in the McKinnon

Parties' appeal in this case, Texas courts have held that a creditor seeking to avail itself of

the remedies listed in TUFTA § 24.008(a) must file an independent "action."  *Kennedy*,

249 S.W3d at 522.  Claims for recovery of a fraudulent transfer cannot be litigated by a

post-judgment motion for damages under Texas law.  *See id.*

Second, in his post-remand brief, the trustee argues that relief under TUFTA §

24.008(b) is "reliant upon a finding of fraudulent transfer."  The trustee reasons that the

state trial court must have found that there was a fraudulent transfer of the Melissa Property

to BMLP as a basis for granting relief under § 24.008(b).  The trustee cites *Hahn v. Love*,

321 SW3d 517 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) for the proposition that

a creditor triggers § 24.008(b) by establishing intent to defraud in connection with a "a pre-

existing non-TUFTA judgment."  Thus, the trustee argues that the state trial court's

findings should have preclusive effect in this proceeding to establish fraud on this Court.

The court in *Hahn*, however, was discussing intent to defraud in the context of an action to avoid a fraudulent transfer under TUFTA § 24.005.  *Id.* at 526.

The trustee also cites several secondary authorities for the proposition that Texas law allows a fraudulent transfer to be recovered without bringing a direct action.  However, these authorities are either not specific to Texas law, *see* 37 AM. JUR. 2d Fraudulent Conveyances and Transfers § 146 (2007), or rely upon pre-TUFTA cases holding that a fraudulent transfer was void, *see* 48 TEX. JUR. 3d Judgments § 562 (2019) (citing *Eckert v. Wendel,* 40 S.W.2d 796 (1931) and *Love v. Gamer*, 64 S.W.2d 393 (Tex. Civ. App. Fort Worth 1933)).  There is no dispute that Texas law now provides that fraudulent transfers are "avoidable," not "void."  TEX. BUS. & COM. CODE §§ 24.005(a), 24.008(a)(1) and 24.009(a).  Thus, § 24.008(b) cannot authorize a levy "on the asset transferred or its proceeds" unless a plaintiff has obtained an enforceable judgment avoiding the transfer of that asset as fraudulent or, perhaps, declaring a transfer void from the inception – neither of which happened in this case.[1]

In their post-remand brief, the McKinnon Parties cite, and quote heavily from, the district court's opinion in *Weekes-Walker v. Macon County Greyhound Park, Inc.*, 2015 U.S. Dist. LEXIS 132018 (M.D. Ala. Sept. 30, 2015).  *Weekes-Walker* involved Georgia's version of UFTA, which is the same as TUFTA (at least with respect to § 24.008(b)).  The creditor in *Weekes-Walker* filed a motion seeking execution on an asset rather than an action to establish a fraudulent transfer under UFTA.  The *Weekes-Walker* court rejected

---

[1] To "levy" generally means "[t]o take or seize property in execution of a judgment."  LEVY, BLACK'S LAW DICTIONARY (11th ed. 2019).

the argument that the motion for writ of execution of "asset(s) fraudulently conveyed" under § 24.008(b) was equivalent to an "action" to set aside a fraudulent transfer. Thus, the court concluded that its ancillary jurisdiction had not been invoked under Federal Rule 69. In discussing *Kennedy*, the *Weekes-Walker* court commented: "At most, *Kennedy* telegraphs doubts that fraudulent transfers can be set aside by joining nonparties in supplementary proceedings solely under subsection (b) …." *Id* at *6.

Here, as in *Kennedy*, the state appellate court determined that Gurley and Wright's TUFTA claims were not brought as an independent "action" required to obtain relief under § 24.008(a). The appellate court determined that, whatever the 2015 final judgment was, "its function and substance is an order incident to levy under [§ 24.008(b)]." *McKinnon v. Gurley*, 2018 WL 5291874, at *5. However, as the state appellate court noted, § 24.008(b) does not set forth any procedures or factual findings necessary to obtain relief. *Id.*

Having carefully considered the parties' arguments and the relevant authorities, the Court concludes that all the elements required for collateral estoppel no longer exist considering the state appellate court's ruling. A critical element is missing for preclusive effect. It is not clear which, if any, of the state trial court's findings relating to Gurley and Wright's fraudulent transfer claims against the TUFTA defendants were necessary to the judgment levying execution on the Melissa Property. Moreover, there is a disconnect between the facts of this case and the language of § 24.008(b). While Gurley established a claim against Cardwell, the claim was for breach of fiduciary duty – not fraudulent conveyance of the Melissa Property – and § 24.008(b) only permits a court to "levy execution on the asset transferred or its proceeds."

17

As the appellate court explained in ruling on the McKinnon Parties' appeal, the state trial court did not have the plenary authority necessary to decide a TUFTA claim or grant any of the relief set forth in TUFTA § 24.008(a).  The appellate court, like the appellate court in *Kennedy,* held that an independent fraudulent transfer "action" is required to obtain any of the relief set forth in § 24.008(a), including avoidance of a fraudulent transfer.  *Cf: Basic Capital Mgmt. v. Dynex Capital, Inc.,* 2017 U.S. Dist. LEXIS 184538 (N.D. Tex Nov. 7, 2017) (holding that a fraudulent transfer action under state law was independent from the state suit, not merely an enforcement action, and that the court could exercise diversity jurisdiction).  Interpreting § 24.008(b) to allow a TUFTA claim to be established in a post-judgment proceeding against non-parties to the judgment would conflict with Texas law by negating the need to file an independent fraudulent transfer action in order to obtain a judgment avoiding a transfer as fraudulent and levy upon the asset.  Bad facts (from the Chapter 7 trustee's perspective) do not justify the adoption of bad law.

## IV.    CONCLUSION

For all these reasons, the Court concludes state court's factual findings do not have preclusive effect in the present action seeking to set aside the Sale Order as a fraud on this Court.  The Court will set aside its prior orders and enter an order setting the Chapter 7 trustee's motion to vacate the Sale Order for an evidentiary hearing.

Signed on 9/29/2020

*Brenda T. Rhoades*          SR

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE