UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| In re<br><br>Donald Lee Cardwell,<br><br>                                  Debtor.<br><br>Mark A. Weisbart,<br><br>                  Trustee-Plaintiff,<br><br>                - vs -<br><br>Donald Lee Cardwell; David McKinnon; Barbara Marshall, LP; and North Ponderosa, LLC.,<br><br>                               Defendants. | Case No. 09-43121<br>(Chapter 7)<br><br><br><br>Adv. Proc. No. 17-4074 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Bill Gurley and Stanley Wright reopened this bankruptcy case to vacate an April 12, 2011, order authorizing the sale of certain real property to North Ponderosa, LLC (the "**Sale Order**") as a fraud on this Court pursuant to Federal Rule of Bankruptcy 9024 and Federal Rule of Civil Procedure 60(d)(3). The motion to vacate and a related adversary complaint relied, in part, upon certain findings by a Texas state trial court. David McKinnon, North Ponderosa, and Barbara Marshall, LP (collectively, the "**McKinnon Parties**") opposed the motion to vacate and argued, among other things, that the state trial court's findings should not be given preclusive effect in determining whether a fraud had been perpetrated upon this Court in connection with the Sale Order. The Court overruled their objections and granted the motion to vacate the Sale Order, and the McKinnon Parties appealed. On appeal, the Fifth Circuit remanded the matter to this Court in light of an intervening state appellate ruling, *McKinnon v. Gurley*, 2018 WL 5291874, at *1 (Tex.

App. — Dallas Oct. 25, 2018), commenting that the ruling "may call into question the preclusive effect of the state trial court's findings of fact." *Matter of Cardwell*, 785 F. App'x 269, 269 (5th Cir. 2019).

On remand, this Court determined that the state trial court's factual findings issued in connection with a 2015 "final judgment" (discussed below) do not have preclusive effect in the present action seeking to set aside the Sale Order as a fraud on this Court. The Court therefore set aside its prior orders and scheduled a consolidated trial on the amended complaint in the adversary proceeding as well as the Chapter 7 trustee's motion to vacate the Sale Order in the main bankruptcy case. The Court conducted the trial on March 25 and 28, 2022, and April 4, 2022. Having considered the evidence submitted at trial, as well as the arguments presented by counsel and the applicable law, the Court makes the following findings of fact and conclusions of law.

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). And venue of this proceeding in this district is proper pursuant to 28 U.S.C. § 1409.

## II.  FINDINGS OF FACT

1. On October 27, 2004, Donald Cardwell divorced Sharon Cardwell through a final decree of divorce entered in Texas state court.

2. Sharon Cardwell claimed that in consideration for transferring her interest in 120-plus acres of real property located at 3632 County Road 413 in Melissa, Texas, where she had lived with Donald Cardwell during their marriage, to Donald Cardwell, she was given a judgment against her ex-husband in the amount of $234,000. She alleged the judgment was evidenced by a $234,000

real estate lien note, and Donald Cardwell was to secure his obligations under the note through a deed of trust on the property.

3. Donald Cardwell, however, did not sign the real estate lien note.

4. In addition to his divorce, Cardwell had a falling out with his long-time business associate, Bill Gurley, in the mid-2000s.

5. Gurley and Cardwell had been business associates for many years. However, on March 30, 2006, Gurley and 121 Investments, a limited liability company equally owned by Cardwell and Gurley, filed their original petition in the District Court for the 134th Judicial District of Dallas County, Texas, Cause No. DC-06-03299, against Cardwell for breach of fiduciary duty. Gurley alleged that Cardwell made a series of misrepresentations to him in the course of conducting business on behalf of 121 Investments. Following a two-day bench trial, on July 14, 2009, the state court entered judgment against Cardwell in the amount of $370,830.84 plus post-judgment interest.

6. Prior to the entry of the state court judgment, Cardwell began meeting with his long-time financial advisor and occasional business partner, David McKinnon, seeking advice on how to manage his debts and protect his assets. Cardwell testified that he was in dire financial straits at the time of these meetings.

7. In or around the summer of 2008, Cardwell met with McKinnon to discuss obtaining a loan secured by a portion of Cardwell's rural homestead. McKinnon informed Cardwell that he had another client, a widow named Barbara Marshall, who had a background in developing real estate and would be interested in a land transaction.

8. Barbara Marshall subsequently agreed to loan Cardwell $600,000 using a 94.255 tract out of Cardwell's rural homestead as collateral (the "**Melissa Property**"). Additional conditions were incorporated into a Letter of Intent ("**LOI**") including, among other terms, a

valuation of the Melissa Property at not less than $800,000 and three years of pre-paid interest (totaling $72,000) paid into an escrow account.

9. The loan was documented by a loan agreement between Cardwell and Barbara Marshall, LP ("**BMLP**"), a promissory note, an escrow agreement, and a deed of trust securing the promissory note. McKinnon was to serve as the escrow agent as well as the trustee under the deed of trust.

10. Cardwell testified that he knew nothing about the conditions in the LOI and that he never satisfied all of them. Nonetheless, the parties closed the loan transaction at Republic Title on October 22, 2008. Mrs. Marshall delivered three cashier's checks totaling $600,000 to fund the loan.

11. Cardwell used $220,885.60 of the loan amount to pay off an existing mortgage debt to Heritage Land Bank. In addition, Cardwell transferred $18,876.22 to Fritz Plumbing & Air, L.P. and $72,000 to David McKinnon. After these and other charges, the net amount disbursed to Cardwell was $278,548.22.

12. Approximately one year later, on October 2, 2009, Cardwell filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code.

13. Cardwell timely filed bankruptcy schedules and a statement of his financial affairs. The Chapter 7 trustee and Cardwell's ex-wife objected to Cardwell's claimed exemptions. In response, Cardwell amended his bankruptcy schedules and statement of financial affairs several times.

14. In his amended schedules filed on July 26, 2010, and August 8, 2010, Cardwell disclosed that he was living on 118 acres in Melissa, Texas. However, he stated that only 24 of those acres, which included his residence, comprised his exempt homestead. He stated that the

4

remaining 94 acres were encumbered by a $600,000 lien in favor of "Barbara Marshall" (the "**Marshall Lien**"), and he represented that he had no equity in the non-exempt 94 acres.

15. On January 19, 2010, BMLP, filed a proof of claim for $600,000. Barbara Marshall signed the proof of claim form. The note and deed of trust attached to the claim were dated October 22, 2008 (within one year of the petition date).

16. The Chapter 7 trustee testified that something did not "smell right" about the Marshall Lien. He reviewed the documents attached to BMLP's claim and, in November 2010, examined Mrs. Marshall pursuant to Bankruptcy Rule 2004. Mrs. Marshall's financial advisor, David McKinnon, attended the examination. The Chapter 7 trustee testified that Mrs. Marshall generally understood the loan transaction, but not the details, and that McKinnon answered many of the Chapter 7 trustee's questions for Mrs. Marshall.

17. The Chapter 7 trustee also deposed Donald Cardwell and visited the 94 acres in Melissa, Texas, with an appraiser.

18. On November 3, 2010, this Court determined that Gurley's judgment against Cardwell was exempt from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4). The decision was affirmed on appeal. *Cardwell v. Gurley*, 2011 WL 6338813 (E.D. Tex. Dec. 19, 2011), *aff'd sub nom. In re Cardwell*, 487 F. App'x 183 (5th Cir. 2012).

19. On November 18, 2010, David McKinnon filed documents forming North Ponderosa. On the Certificate of Formation, McKinnon is listed as North Ponderosa's registered agent, and its registered office was his business address. An individual named Bill Gibson was listed as the initial manager, and an individual named Sharon Leal signed the Certificate of Formation as the organizer of North Ponderosa.

20. North Ponderosa began negotiating the purchase of the 94 acres in Melissa, Texas (the Melissa Property) with the Chapter 7 trustee. North Ponderosa offered to buy the Melissa Property from Cardwell's bankruptcy estate while Cardwell's appeal of the non-dischargeability judgment was pending. The Chapter 7 trustee was aware that McKinnon, who was Mrs. Marshall's financial advisor, was also associated with North Ponderosa.

21. As a result of the appearance of little-to-no equity in the Marshall Property, the Chapter 7 trustee agreed to sell the Marshall Property to North Ponderosa for $25,000. On February 17, 2011, the Chapter 7 trustee filed a motion to sell the Melissa Property to North Ponderosa, LLC, for $25,000 plus the assumption of the Marshall Lien. No objection was filed. On April 12, 2011, this Court entered the order authorizing the sale ("**Sale Order**").

22. On July 27, 2011, a deed of sale was issued to North Ponderosa for the Marshall Property. In a Corrected Deed dated July 27, 2011, David McKinnon is listed as the representative for North Ponderosa who should receive a copy of the Corrected Deed after recording.

23. On February 27, 2012, Bill Gibson, as the initial member of North Ponderosa, and Donald Cardwell signed a one-year lease of the 94-acre Melissa Property for the nominal sum of $10, renewable thereafter on a month-to-month basis.

24. On May 12, 2012, McKinnon signed and filed a Texas Franchise Tax Public Information Report for North Ponderosa as its president.

25. On October 25, 2013, the Court closed Cardwell's bankruptcy case.

26. On December 19, 2013, after completion of Cardwell's bankruptcy case, Gurley sought to enforce his non-dischargeable judgment against Cardwell. Gurley filed a post-judgment application for turnover relief and appointment of a receiver against Cardwell in state court in the same case (cause number 06-3299) where the judgment had been entered. The state trial court

appointed Stanley Wright as the receiver. Thereafter, Wright deposed Cardwell and learned that Cardwell was leasing the Melissa Property for $10 per year pursuant to the lease agreement with North Ponderosa.

27. Gurley and Wright amended their post-judgment petition to assert fraudulent transfer claims against not only Cardwell, who was the defendant in the original lawsuit, but also David McKinnon, North Ponderosa, BMLP and others connected to the allegedly fraudulent transfer of the Melissa Property (collectively, the "**TUFTA defendants**") to North Ponderosa. Gurley and Wright sought relief pursuant to the Texas Uniform Fraudulent Transfer Act ("**TUFTA**"). Gurley and Wright challenged, among other things, the creation of the Marshall Lien and the transfer of the Melissa Property to North Ponderosa as fraudulent conveyances under TUFTA.

28. Gurley and Wright filed their TUFTA claims as part of their post-judgment collection action in the existing state court proceeding. Except for Cardwell, the TUFTA defendants were not parties to the original lawsuit. Gurley and Wright did not initiate a new action against the TUFTA defendants in state court.

29. On September 25, 2014, the McKinnon Parties filed a motion with this Court, requesting that this Court reopen Cardwell's bankruptcy case to evaluate and administer the TUFTA claims asserted by Gurley and Wright in the state court post-judgment proceeding. More specifically, the McKinnon Parties argued that the TUFTA claims were property of the bankruptcy estate and should be administered by this Court.

30. On December 17, 2014, the Court authorized the state court litigation to proceed, subject to the requirement that any recovery obtained by Gurley and Wright would be deposited

into this Court's registry for the benefit of the bankruptcy estate. The Court subsequently re-closed Cardwell's bankruptcy case.

31. The state court conducted a bench trial on October 1, 2, and 5, 2015 on the TUFTA claims. On October 13, 2015, the state court entered a partial final judgment in cause number 06-3299, reiterating the award provided in the 2009 final judgment, and ordering that execution levy on the Melissa Property (leaving the issue of attorney's fees for a subsequent hearing).

32. On October 20, 2015, Gurley and Wright filed a motion in state court to sever their post-judgment TUFTA claims from the underlying breach of fiduciary duty case. Gurley and Wright's "Second Amended Post-Judgment Petition for Relief" was the live pleading at the time they presented their fraudulent transfer claims to the state trial court and at the time of the purported severance. That petition recited "[t]his action is an ancillary post judgment effort to collect and enforce this Court's judgment" and reiterated the award provided in the original July 14, 2009, final judgment. The petition sought to establish claims for fraudulent conveyances under TUFTA §§ 24.005(a)(1)-(2) and 24.006(a)-(b), and the petition requested relief under TUFTA § 24.008(a)-(b).

33. On November 6, 2015, the state trial court granted Gurley and Wright's motion to sever and ordered the clerk of the court to give the severed claims a new cause number and transfer copies of relevant pleadings and orders into the newly severed action. The clerk assigned the severed claims cause number 15-13561. The state trial court then signed a document entitled "Final Judgment" under the new cause number, which reiterated the monetary award provided in the July 14, 2009, final judgment in cause number 06-3299 as well as the order that "execution shall be levied" on the Melissa Property provided in the partial final judgment. The 2015 final judgment disposed of the attorney's fee claims without awarding any fees.

34. The state trial court memorialized its findings on the TUFTA claims in the Second Amended Findings of Fact and Conclusions of Law ("**FOFCOL**") issued on June 4, 2016.

35. The McKinnon Parties appealed from the state trial court's 2015 final judgment.

36. This Court reopened Cardwell's bankruptcy case on July 7, 2016, for the purpose of determining whether a fraud had been perpetrated on the bankruptcy court in connection with the Sale Order, and if so, whether to vacate the Sale Order administer the Melissa Property as an asset of the bankruptcy estate.

37. On August 5, 2016, Gurley and Wright filed their motion to vacate the Sale Order as having been obtained through fraud on this Court pursuant to Federal Rule 60(d)(3). The parties agreed to bifurcate the procedural issues and the substantive issues raised by the motion to vacate.

38. After a hearing regarding the procedural issues, this Court issued the "Order on Bifurcated Issues Related to Motion to Vacate the Order Granting Trustee's Motion for Authority to Sell Property of the Estate and to Pay Certain Taxes" (the "**First Order**") on November 22, 2016. In the First Order, this Court concluded that (1) Gurley and Wright were authorized to pursue the relief sought in their motion to vacate; (2) Gurley and Wright were not required to file an adversary proceeding pursuant to Bankruptcy Rule 7001; and (3) the McKinnon Parties were collaterally estopped from relitigating certain findings relating to the fraudulent nature of the Melissa Property transaction in connection with the motion to vacate the Sale Order.

39. The findings from the state court FOFCOL that this Court found to have preclusive effect included the following matters decided as part of the TUFTA claims: (1) whether the $600,000 loan from BMLP to Cardwell was funded; (2) the fair market value of the Melissa Property on the date of the purported loan; (3) whether Mrs. Marshall had any knowledge of the loan to Cardwell; (4) Mrs. Marshall's reliance on David McKinnon as her financial advisor; (5)

9

McKinnon's relationship with Cardwell; (6) whether Cardwell schemed with McKinnon to protect or hide his interest in the non-exempt Melissa Property from creditors; and (7) whether Cardwell and McKinnon deliberately concealed the connections between themselves, BMLP and North Ponderosa from the Chapter 7 trustee.

40. The parties subsequently filed cross motions for summary judgment on the issue of whether to vacate the Sale Order. On May 25, 2017, after a hearing, this Court issued the "Order Regarding Motions for Summary Judgment" (the "**Second Order**") denying the McKinnon Parties' motion for summary judgment, granting Gurley and Wright's motion for summary judgment, and vacating the Sale Order.

41. The McKinnon Parties appealed this Court's orders. The District Court affirmed, and the McKinnon Parties appealed to the Fifth Circuit.

42. While the appeals were pending, on August 7, 2017, the Chapter 7 trustee filed an adversary complaint against the TUFTA defendants seeking to avoid the Marshall Lien as a fraudulent transfer under 11 U.S.C. § 548 as well as TUFTA. The Chapter 7 trustee also sought to avoid the deed on the Marshall Property as an unauthorized post-petition transfer under 11 U.S.C. § 549. In addition, the Chapter 7 trustee sought a judgment voiding the Marshall Lien on the grounds that it was not supported by any consideration as required by Texas law. The Chapter 7 trustee requested that this Court either transfer the Marshall Property to the bankruptcy estate or order the McKinnon Parties to pay the value of the Marshall Property to the bankruptcy estate.

43. The Chapter 7 trustee filed a motion for summary judgment in the adversary proceeding on November 8, 2017, based, in part, on the First and Second Orders. The McKinnon Parties opposed the motion. On March 26, 2018, the Court entered an order granting the Chapter 7 trustee's motion in part and denying it in part. More particularly, the Court abstained from

considering the Chapter 7 trustee's TUFTA claims, granted summary judgment on the Chapter 7 trustee's § 549 claim, and avoided the deed granted to North Ponderosa.

44.     After obtaining a partial summary judgment in the adversary proceeding, the Chapter 7 trustee non-suited the balance of his claims and requested a final judgment. The Court entered a Final Judgment and Findings of Fact and Conclusions of Law on July 3, 2018.

45.     In the adversary proceeding, the McKinnon Parties filed a "Motion to Vacate Final Judgment" on July 17, 2018, and a "Motion to Vacate and/or Motion Under FRE 9024 Seeking Relief from Final Judgment" on December 31, 2018. The Court continued the hearing on these motions in anticipation of a ruling on the appeal from the First and Second Orders.

46.     While the appeal of the First and Second Orders was pending in the Fifth Circuit, and after this Court entered the Final Judgment in the adversary proceeding, the state appellate court issued its decision in the appeal from the state trial court's judgment. The state appellate court dismissed the appeal, reasoning that the state trial court's 2015 "Final Judgment" could only be a non-final judgment or decree enforcing the trial court's original 2009 final judgment. The appellate court stated: "To the extent the [2015 Final] Judgment is a part of the underlying case, its substance confirms that the relief it granted was pursuant to [§] 24.008(b), which reads, in part, that a judgment creditor, 'if the court so orders, may levy execution on the asset transferred or its proceeds.'" *McKinnon v. Gurley*, No. 05-16-00246-CV, 2018 WL 5291874, at *5 (Tex. App. Oct. 25, 2018) (citation omitted).

47.     In light of the remand from the Fifth Circuit, and after a hearing on the legal effect of the state appellate court's ruling, this Court entered its Memorandum Opinion on Remand on September 29, 2020. The Court concluded that the state trial court's FOFCOL issued in connection with the 2015 "Final Judgment" do not have preclusive effect in this present action seeking to set

11

aside the Sale Order as a fraud on the Court. Accordingly, the Chapter 7 trustee's sale order was once again pending as a contested matter before this Court, and the adversary proceeding seeking to avoid the Marshall Lien was set for trial.

### III. CONCLUSIONS OF LAW

1. The Chapter 7 trustee contends that the Sale Order was a fraud on the Court and should be vacated. The Chapter 7 trustee's amended adversary complaint, which he filed in March 2018 (prior to the Fifth Circuit's remand), is premised on this Court having set aside the Sale Order as a fraud on the Court. Accordingly, in his amended adversary complaint, he seeks avoidance of the Marshall Lien (Count 1), avoidance of North Ponderosa's deed on the Marshall Property (Count 2), and recovery of the Marshall Property under 11 U.S.C. § 550 (Count 3).

2. The Court, therefore, will address whether the Sale Order should be set aside as a fraud on the Court before turning to the Chapter 7 trustee's adversary complaint.

3. Federal Rule 60(b) sets forth grounds upon which a party may seek relief from a final judgment, including "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." FED. R. CIV. P. 60(b)(3). A motion to set aside a judgment under Rule 60(b)(3) must be made within one year of the judgment at the latest. *See* FED. R. CIV. P. 60(c)(1).

4. In addition, as this Court discussed in its prior Memorandum Opinion entered in the main bankruptcy case on May 25, 2017, the Court has the inherent power to vacate judgments that are based on fraud. *In re Bennett*, 2012 WL 2563854, at *4 (Bankr. S.D. Tex. June 28, 2012). *See Thomas v. United States (In re Thomas),* 223 F. App'x 310, 313 (5th Cir. 2007) ("Bankruptcy Courts are courts of equity, and a court of equity is enabled to frustrate fraud and work complete

12

justice.") (citations and internal quotation marks omitted). Federal Rule 60(d)(3) confirms that Rule 60 "does not limit a court's power to ... set aside a judgment for fraud on the court."

5. The parties agree that the Chapter 7 trustee has the burden to establish fraud on the Court by clear and convincing evidence. *Kinnear-Weed Corp. v. Humble Oil & Ref. Co.*, 441 F.2d 631, 636 (5th Cir. 1971). The Fifth Circuit defines clear and convincing evidence as follows:

> [T]he weight of proof [that] produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct[,] weighty, and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.

*United States v. Jackson*, 19 F.3d 1003, 1007 (5th Cir. 1994) (citations omitted).

6. Under existing case law in this circuit, fraud on the court is a narrow concept embracing frauds which defile the court itself or are perpetrated by officers of the court so that the judiciary cannot perform its job of adjudging cases impartially. *See, e.g., Wilson v. Johns–Manville Sales Corp..,* 873 F.2d 869 (5th Cir. 1989) (describing fraud on the court as a "narrow concept"). "To establish fraud on the court, it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *First Nat'l Bank of Louisville v. Lustig,* 96 F.3d 1554, 1573 (5th Cir. 1996) (internal quotation marks omitted)). "Generally speaking, only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1338 (5th Cir. 1978) (citing *Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238 (1944)). "Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court." *Id.*

7. The Fifth Circuit in *Browning v. Navarro*, 826 F.2d 335, 346 (5th Cir. 1987) defined "fraud upon the court" as follows:

13

> The most commonly used definition is that found in Moore's *Federal Practice:* 'Fraud upon the court should embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.'

*Id*. (citing 7 Moore, *Federal Practice* ¶ 60.33 at 515 (1971)).

8. Where the wrong is only between the parties and there has been no direct assault on the integrity of the judicial process itself, federal courts have refused to invoke the doctrine of fraud on the court. *See* 11 Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2870 at 578 (collecting authority). Stated another way, fraud on the court requires a 'scheme by which the integrity of the judicial process has been fraudulently subverted by a deliberately planned scheme in a manner involving 'far more than injury to a single litigant.' *Addington v. Farmer's Elevator Mutual Insurance*, 650 F.2d 663, 668 (5th Cir. 1981) (quoting *Hazel-Atlas Glass Co.,* 322 U.S. at 245-46).

9. In this case, as discussed, the Chapter 7 trustee seeks to set aside the Sale Order as having been obtained through a fraud on the Court. If he is successful in setting aside the Sale Order in the main case, then he seeks a judgment in the adversary proceeding setting aside the Marshall Lien as a fraudulent transfer under § 548 of the Bankruptcy Code as well as TUFTA.

10. Notably, to the extent the Chapter 7 trustee relies upon his TUFTA claims to establish a fraud on this Court, TUFTA does not require a showing "fraud." TUFTA §§ 24.005(a)(2) and 24.006(a) make transfers voidable based on a lack reasonably equivalent value without regard to fraudulent intent. And § 24.006(b) makes a transfer voidable if it is made to an insider when the debtor was insolvent, again without reference to fraudulent intent. Although § 24.005(a)(1) does implicate fraudulent intent ("the debtor made the transfer …with actual intent to hinder, delay, or *defraud* any creditor of the debtor."), intent to defraud is not required – a showing of an intent to "hinder" or "delay" will suffice.

11. The intent that is required under TUFTA is not the same intent that is necessary to support an action for fraud. *See Nobles v. Marcus,* 533 S.W.2d 923 (Tex. 1976) (explaining that fraud and fraudulent transfer are distinct causes of action.). Rather, the intent required under TUFTA is simply the intent to hinder, delay or defraud a creditor by putting assets beyond that creditor's reach. *In re Reed,* 700 F.2d 986, 991 (5th Cir. 1983).

12. Here, Cardwell's pre-petition efforts to shield his assets from creditors may implicate TUFTA but simply do not rise to the level of fraud on the Court. The McKinnon Parties established at trial that the loan from BMLP to Cardwell was, in fact, funded.[1] Cardwell may have cheated BMLP by obtaining a $600,000 loan that he had no intention of repaying, secured by property that was worth significantly less than the loan, and without disclosing the claims his wife asserted with respect to the Melissa Property, among other things. However, Cardwell's conduct was not directed at deceiving the Court, but at his creditors, including, perhaps especially, his ex-wife and Gurley, by removing equity from the Melissa Property.

13. "Fraud on the court (other than fraud as to jurisdiction) is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985). Fraud on the Court requires "far more than an injury to a single litigant." *Addington*, 650 F.2d at 668 (citing *Hazel-Atlas Glass Co.*).

## CONCLUSION

For all these reasons, the Court finds and concludes that the Chapter 7 trustee's motion to set aside the Sale Order as a fraud on this Court should be denied. The Chapter 7 trustee has failed to show that the Marshall Lien, which secured BMLP's loan to Cardwell, was fraudulent under

---

[1] This Court previously found that the Sale Order was a fraud on this Court and should be set aside based, in part, on the preclusive effect of the state trial court's finding that the loan from BMLP to the Debtor was not funded.

15

the Bankruptcy Code or Texas law. The Court will enter an order denying the motion to vacate in the main bankruptcy case and a final judgment in the adversary proceeding consistent with these Findings of Fact and Conclusions of Law.

Signed on 9/29/2022

*Brenda T. Rhoades* ST
HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE